**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **RONNIE WILLIAMS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Case No. 5:15-cv-00231-MTT-CHW** |
| | : | |
| **Warden McLaughlin,** *et al.*, | : | **Proceedings Under 42 U.S.C. § 1983** |
| **Defendant.** | : | **Before the U.S. Magistrate Judge** |
| _____ | : | |

## REPORT AND RECOMMENDATION

Plaintiff Ronnie Williams, who is presently confined at Hays State Prison, filed a pro se civil rights complaint under 42 U.S.C. § 1983 on June 15, 2015. Doc. 1. Plaintiff's complaint arises out of events occurring at Macon State Prison in February 2015. According to Plaintiff, Defendant McIntyre accused Plaintiff of "snitching" in front of another inmate, resulting in threats being made to Plaintiff's life. Plaintiff further alleges that Defendants Smith, Mango, and Henderson slammed Plaintiff to the ground without provocation and smashed his face into the ground.[1]

Currently before the Court is a Motion for Summary Judgment filed by Defendants McIntyre, Henderson, Mango, and Smith. Defendants argue they are entitled to Summary Judgment because (1) Plaintiff cannot establish that Defendant McIntyre violated his Eighth Amendment rights regarding being called a snitch, (2) Plaintiff cannot establish that Defendants Henderson, Mango, and Smith used excessive force, (3) Plaintiff cannot base a Section 1983 action on supervisory liability, (4) Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment, and (5) Defendants are entitled to qualified

---

[1] Plaintiff's Complaint, signed under oath, alleged that Defendants punched him repeatedly in the abdomen and stated "I bet he won't snitch on nobody else after that." Doc. 1-1, p. 3. During Plaintiff's deposition, these allegations were abandoned and transformed into those discussed below.

immunity. As Plaintiff does not present a genuine of material fact as to whether Defendants violated his constitutional rights, and Defendants are entitled to qualified immunity, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 27) be **GRANTED**.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986), and *Verbraeken v. Westinghouse Elec. Corp*., 881 F.2d 1041, 1045 (11th Cir. 1989).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. *See Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See *id*. (citing *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. *Peek–A–Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla*., 630 F.3d

1346, 1353 (11th Cir. 2011). However, "unsworn statements, even from *pro se* parties, should not be 'consider[ed] in determining the propriety of summary judgment.'" *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (quoting *Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir.1980)).

## II. FACTS

The following facts are taken from Plaintiff's deposition (Docs. 27-2, 27-3) and construed in the light most favorable to Plaintiff, the non-moving party.

One month after Plaintiff was transferred to Macon State Prison, a violent disturbance, which Plaintiff described as a "war," erupted in Plaintiff's dorm between Muslim inmates and members of the Bloods Gang. Plaintiff was determined to have been involved in the disturbance and was transferred to administrative segregation, in the "Tier II" program. Doc. 27-2, p. 9. Plaintiff alleges, and Defendants dispute, that approximately one month later Defendant McIntyre approached Plaintiff seeking information concerning the disturbance. Plaintiff explained that he did not know what happened.

While in administrative segregation, Plaintiff overheard "Big Ali," an inmate confined in cell 214 of the Tier II dorm and affiliated with the Gangster Disciples gang, tell another Gangster Disciple that Plaintiff "can't go back to the compound or [Plaintiff] can't go to no compound in the state of Georgia." Doc. 27-2, p. 14. Plaintiff indicated that Big Ali was a leader of the Gangster Disciples gang that assaulted Plaintiff on the night before the "war" between the Muslims and the Bloods. Doc. 27-2, p. 14.  Plaintiff testified that he had smuggled tobacco when he transferred to Macon State Prison, and that he had refused to give it to the Gangster Disciples. For his refusal, Plaintiff was attacked by three other inmates in his cell while other members of the Gangster Disciples were placed at Plaintiff's cell door as "security." Doc. 27-2, p. 10.

In light of this history, Plaintiff interpreted Big Ali's statement to indicate that Plaintiff would be violently attacked if Plaintiff returned to general population. Doc. 27-2, p. 14.  Plaintiff did not know how to proceed in this situation and sought advice from his cell neighbor.[2] Plaintiff's cell neighbor advised Plaintiff to write a grievance concerning the situation. Plaintiff drafted a grievance and "fished" it to his cell neighbor. Fishing is slang for attaching an object to a string and sliding it under the cell door to another inmate. Doc. 27-2, p. 21. After working with his cell neighbor, Plaintiff was able to send Defendant McIntrye a "kite" explaining that Plaintiff needed to be placed in protective custody.[3] Doc. 27-2, p. 13.  Plaintiff could not speak to Defendant McIntyre directly because he would have been overhead by other inmates, which would have caused even more problems for Plaintiff. Doc. 27-2, p. 19.

In February, Plaintiff suffered a migraine headache and began kicking on his door in attempt to get the guards' attention. Defendant McIntyre approached Defendant's cell and stated, "you need to lay your scary ass down, you know, before I . . . tell the people in dorm what you're writing scribes about." Doc. 27-2, p. 15-16. McIntyre was referring to the "scribe" or note that Plaintiff gave him concerning the conversation Plaintiff overhead Mr. Big Ali having with other gang members. Doc. 27-2, p. 16.  After a brief exchange, Defendant McIntyre stated "as a matter of fact, okay, you wrote the scribe at 214 about you can't go in the compound, scary ass, something like that." *Id* at 16. Following these statements, inmates in the segregation block "went to hollering," threatening Plaintiff and calling him a snitch. Doc. 27-2, p. 16. Plaintiff overhead inmates state that "folk," a slang term for Gangster Disciples, should not worry about Plaintiff's snitching because Plaintiff was going to be dealt with violently. *Id*. at 17.

---

[2] In addition to writing kites, Plaintiff was able to communicate with other inmates by yelling through the vents. Doc. 27-2, p. 20.

[3] Inmates in protective custody at Macon State Prison are housed in one-man cells in dorm J-1. This is the same dorm where Plaintiff was being held in administrative segregation during the events underlying this action. Doc. 27-2, p. 19.

Plaintiff then filed a grievance. Still in fear for his life, Plaintiff began flooding his cell in an attempt to cause a disruption and be transferred to a different prison. Doc. 27-2, p. 23. After a particular flooding incident, Plaintiff was escorted to medical in anticipation of being placed in a strip cell. Doc. 27-2, p. 24. Plaintiff was cleared by medical per operating procedure and escorted back to his cell. When they arrived at the cell, Defendant Smith picked Plaintiff up by his legs and slammed him down on his face, then smashed Plaintiff's face into the ground.[4] Doc. 27-2, p. 24.

### a. Defendants' Evidence

In support of their Motion, Defendants have presented the affidavits of Defendant Henderson, Defendant Mango, Defendant McIntyre, and Gail Spikes, as well as an incident report dated March 23, 2015, video evidence, and Plaintiff's deposition. The affidavit of Defendant McIntyre denies nearly every aspect of Plaintiff's version of events concerning February 10, 2015. On that date, Defendant McIntyre heard Plaintiff yelling and cursing from his cell. Defendant McIntyre testifies that he instructed Plaintiff to stop but did not threaten to expose Plaintiff as a snitch, did not expose Plaintiff as a snitch, and did not receive any kites from Plaintiff. Doc. 27-12, p. 3. The affidavits of Sean Henderson (Doc. 27-5) and Defendant Mango (Doc. 27-7) indicate that Plaintiff was escorted to and from medical on March 23, 2015, to undergo an examination in anticipation of entering a strip cell. When Plaintiff was returned to his cell, he attempted to head-butt Defendant Smith, which resulted in Defendant Smith, Mango, and Henderson taking Plaintiff to the ground. Defendant Smith stepped out of the cell seconds later, and Plaintiff was brought back to his feet by Defendants Mango and Henderson. Medical

---

[4] Plaintiff's complaint alleged that Defendant Henderson punched Plaintiff in the abdomen while he was restrained by Defendants Smith and Mango. Doc. 1-1, p. 3. Plaintiff's deposition and subsequent filings make no reference to these allegations. Plaintiff's deposition makes clear that the events of his complaint are the same events depicted on the video evidence discussed below.

staff arrived on the scene less than a minute later, but Plaintiff refused to be examined. All GDC personnel then exited Plaintiff's cell and his handcuffs were removed through the tray flap. The incident was recorded by two video cameras, which are discussed below.

### III. DISCUSSION

Based on the facts set out above, Plaintiff brings two separate Eighth Amendment claims. Plaintiff alleges that his Eighth Amendment rights were violated when Defendant McIntyre implicated Plaintiff as a snitch in front of other inmates and put his life at risk, and that Defendants Smith, Henderson, and Mango used excessive force against Plaintiff when they slammed him to the ground while he was handcuffed. Defendants move for summary judgment as to both claims.

I.      Eighth Amendment Standard

"The Eight Amendment governs 'the treatment a prisoner receives in prison and the conditions under which he is confined." *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). After incarceration, the protection afforded by the Eighth Amendment is limited and only the "unnecessary and wanton infliction of pain'" which "constitutes cruel and unusual punishment" is forbidden. *Farrow*, 320 F.3d at 1242 (quoting *Ingraham v. Wright*, 430 U.S., 670 (1977)). "[S]tates may not impose punishment that shock the conscience, involve unnecessary and wanton infliction of pain, offend evolving notions of decency, or are grossly disproportionate to the offense for which they are imposed." *Hamm v. Dekalb County*, 774 F.2d 1567, 1571 (11th Cir. 1985) (citing *Newman v. Alabama*, 503 F.2d 1320, 1330 n. 14 (5th Cir. 1974)). Thus, "courts hold that states violate the Eighth Amendment if they . . . fail to provide prisoners with reasonably adequate food, clothing, shelter, and sanitation. Pursuant to the Eighth Amendment, prisoner officials have a duty to ensure the 'reasonably

safety of inmates and protect prisoners from the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

a.  *Failure to Protect Claim*

As an initial matter, Plaintiff has failed to oppose Defendant's Motion for Summary Judgment as to his failure to protect claim. In his response, Plaintiff indicates that he intends to rely on the evidence Defendants attached to their Motion and is "satisfied with all issues and feels he does not need to file affidavits or documents" and "waives any right to affidavits and or documents." Doc. 34, pp. 4, 5. Plaintiff specifically identifies Defendants' exhibits 7 and 8, however, which relate only to his excessive force claim. Doc. 34, p. 2. Given Plaintiff's pro se status, the confusing nature of his pleadings, and his allegations that he has difficulty reading and writing, it is not clear that Plaintiff has manifested an intention to withdraw or abandon his failure to protect claim.

Plaintiff was advised that he could not oppose summary judgment simply by relying on his pleadings and that he was required to file a "short and concise statement of material facts in numbered paragraphs." Doc. 30, p. 1. Nevertheless, the Court "cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the Court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citations omitted). Out of an abundance of caution, the Court will consider as evidence the sworn testimony contained in Plaintiff's deposition. *See Gibson v. Valley Avenue Drive-In Restaurants, LLC*, 597 F. App'x 568, 570 -71 (11th Cir. 2014) (discussing district court's reliance on all admissible evidence, including pro se plaintiff's deposition testimony, where

plaintiff failed to oppose summary judgment).

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828. "An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond[] reasonably to the risk." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001)) (alterations in original). To survive summary judgment, a Plaintiff must show "(1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) a causal connection between the defendant's conduct and the Eighth Amendment violation." *Alvarez v. Sec. Fla. Dept. of Corr.* 646 F. App'x 858, 862 (11th Cir. 2016) (quoting *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)). The Eleventh Circuit has held that the Eighth Amendment may be violated where prison officials expose an inmate to retaliatory violence or the potential for great harm by labeling an inmate a "snitch." *See Harmon v. Berry*, 728 F.2d 1407 (11th Cir. 1984); *Gullatte v. Potts*, 654 F.2d 1007 (5th Cir. 1981).[5] The label of "snitch" gives "prison officials a higher level of awareness and responsibility for the risks facing that particular inmate." *Carter v. Galloway*, 352 F.3d 1346, 1349 at n.9 (11th Cir. 2003).

Plaintiff asserts that Defendant McIntyre was deliberately indifferent when he labeled Plaintiff a snitch and subjected Plaintiff to a substantial risk of serious harm through inmate retaliation. Defendants respond that Plaintiff has failed to carry his burden as to prong one of his Eighth Amendment failure to protect claim because Plaintiff has not shown that he was physically harmed as a result of being labeled a snitch. Defendants further argue that because

---

[5] *C.f. Spelveda v. Burnside*, 170 F. App's 119 (11th Cir. 2006) (affirming grant of summary judgment where claimant alleged officers referred to him as a "snitch" in front of other inmates).

Plaintiff was in administrative segregation, Plaintiff was not subjected to a substantial risk of serious harm.

It is well established that an Eighth Amendment claim may be sustained "so long as the alleged injury is imminent or real and immediate and not merely conjectural or hypothetical." *Smith v. Sec., Dept. of Corr.*, 602 F. App'x 466, 469 (11th Cir. 2015) (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003)). That is, a Plaintiff does not have to present evidence of actual injury to survive summary judgment for an Eighth Amendment deliberate indifference claim. *See Vinyard v. Wilson*, 311 F. 3d 1340, 1353 (11th Cir. 2002) ("The Supreme Court ha[s] decided that actual injury [is] not essential to an Eighth Amendment violation."); *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition.") Defendants, therefore, are not entitled to summary judgment based solely on Plaintiff's failure to allege physical injury. Defendants are entitled to summary judgment, however, because Plaintiff has failed to show that he faced an imminent or real and immediate threat sufficient to satisfy Eighth Amendment standards.

It is uncontested that Plaintiff resided in a one-man cell in the administrative segregation unit at Macon State Prison for the remainder of his incarceration at that prison. Macon State Prison's administrative segregation unit is in J Building, which also houses the protective custody unit. Doc. 27-12, p.4. Both administrative segregation and protective custody feature one man cells. *Id*. Plaintiff himself concedes that he faced less danger while confined in administrative segregation, and that he sought to remain in protective custody when he was phased out of administrative segregation. Doc. 27-2, p. 23. Plaintiff further concedes that transfer from Macon State Prison to another GDOC location would help to resolve whatever threat he

faced. *Id*. The threats against Plaintiff also indicated that Plaintiff's safety was at risk when he left administrative segregation.

While Plaintiff may have faced a real and immediate threat to his safety if housed in general population, the undisputed evidence shows that he was not returned to general population, and there is no evidence indicating that the alleged actions of Defendant McIntyre caused the same likelihood of violence against Plaintiff while he was confined in administrative segregation or after he was transferred. Rather, it is undisputed that the threat of retaliation was tempered by Plaintiff's placement in administrative segregation.  While Plaintiff was in segregation, he was not subjected to a "strong likelihood" of a substantial injury, rather than a 'mere possibility' of substantial injury, as required by the Eighth Amendment. *Alvarez v. Sect., Fla. Dept. of Corr.*, 646 F. App'x 858, 863 (11th Cir. 2016) (quoting *Brooks*, 800 F.3d at 1301).

Because Plaintiff remained in protective custody for the remainder of his time at Macon State Prison, and because Plaintiff has since been transferred to another location, he has failed to show that he was subjected to a substantial risk of serious harm.  *See Alvarez v. Sect., Fla. Dept. of Corr.*, 646 F. App'x 858, 863 (11th Cir. 2016) (Plaintiff's allegation that other inmates wanted to harm him because he is a "snitch" failed to state a claim where Plaintiff was in protective management). *Curten v. Riley*, 2013 WL 1755789 (W.D. Wa. 2013) (granting motion to dismiss where Plaintiff was allegedly labeled a "snitch," but was in protective custody). Accordingly, Defendants are entitled to summary judgment as to this claim[6] and it is **RECOMMENDED** that

---

[6] Plaintiff's deposition also indicates that he was under threat of harm prior to the statements allegedly made by Defendant McIntrye. The night before violence broke out in G dorm between the Muslims and the Bloods, Plaintiff was attacked by the Gangster Disciples for refusing to hand over contraband tobacco. The "kite" Plaintiff sent to Defendant McIntyre concerned these events and the danger Plaintiff faced as a result of his actions. By the time Defendant McIntyre made statements concerning Plaintiff's kite, "Big Ali" had already indicated that Plaintiff would not be safe returning the compound and Plaintiff was seeking protective custody as a result. Doc. 27-2, p. 11. Thus, while not dispositive of the issue, Plaintiff's deposition testimony indicates that the same individuals seeking to harm Plaintiff after Defendant McIntyre's statements were already attempting to harm Plaintiff for an independent reason. There is no evidence indicating that Defendant McIntyre's statements exposed Plaintiff to a risk that was not

Defendants' Motion (Doc. 27) be **GRANTED** as to Plaintiff's failure to protect claim. The Court need not address the issue of deliberate indifference and causation.

Furthermore, under Section 1997e(e) and Eleventh Circuit case law, an incarcerated plaintiff such as this one "cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury." *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015) (citing *Al-Amin*, 637 F.3d 1192, 1198 (11th Cir 2011) concerning punitive damages and *Harris v. Garner*, 190 F.3d 1279 1286 (11th Cir. 1999) concerning compensatory damages). Plaintiff does not claim that he suffered a physical injury as a result of Defendant McIntyre's actions. To the extent that Plaintiff seeks injunctive or declaratory relief such claims are moot as it is undisputed that Plaintiff has been transferred to another facility. *See Dudley v. Stewart* 724 F.2d 1493, 1494 (11th Cir. 1984) ("Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury."). Therefore, notwithstanding the above analysis, even if Plaintiff had shown a genuine issue of material fact, Plaintiff could only seek nominal damages. *See Al-Amin*, 637 F.3d 1192.

### b. Excessive Force

Excessive force claims brought pursuant to 28 U.S.C. § 1983 are not governed by a single standard. Instead, the analysis begins by "identify[ing] the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Conner*, 490 U.S. 386, 394 (1989) (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). Usually, the analysis will focus on Fourth Amendment proscriptions against unreasonable seizures or the Eighth Amendment's proscription

---

already present. Plaintiff already could not safely return to the "compound," and his position was not significantly altered. Plaintiff faced the same threat of violence and was shielded from that threat through his assignment in administrative segregation and subsequent transfer.

against cruel and unusual punishment. *Id.* Claims of excessive force in the context of those incarcerated following conviction are analyzed under Eighth Amendment standards. *Whitley v. Albers*, 475 U.S. 312, 318-25 (1986).

Eighth Amendment excessive force claims have both an objective and subjective component, and Plaintiff has the burden of establishing both. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). To satisfy the subjective prong, Plaintiff must demonstrate that the Defendant acted with a malicious and sadistic purpose to inflict harm. *Id.* To satisfy the objective prong, the plaintiff must show that "the alleged wrongdoing [was] 'objectively harmful' enough to establish a constitutional violation." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)). However, the key inquiry for excessive force claims arising out of the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 36 (2010) (quoting *Hudson*, 503 U.S. at 7). When the use of force is malicious or sadistic, "contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Id.* (quoting *Hudson*, 503 U.S. at 9).

The Eleventh Circuit recognizes a variety of factors when determining the legitimacy of the use of force in a custodial setting. The factors include "(1) the need for the application of force, (2) the relationship between need and the amount of forced used, (3) the extent of the prisoner's injuries, (4) the threat reasonably perceived by the officials on the basis of facts known to them, and (5) efforts made to tempter the severity of the force. *Tate v. Rockford*, 497 F. App'x 921, 923 (11th Cir. 2012) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)). These factors determine whether "the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm

as is tantamount to knowing willingness that it occur." *Skrtich v. Thorton*, 280 F. 3d 1295, 1299 (11th Cir. 2002) (quoting *Whitley,* 475 U.S. at 321).

In the present case, the parties dispute the events that took place but do not dispute that the incident was captured on two video recordings. Doc. 27-2, p. 25. In his complaint, Plaintiff alleges that Defendants Smith, Mango, and Henderson entered his cell without cameras, closed his cell door, and then held Plaintiff while Defendant Henderson punched Plaintiff in the abdomen. Doc. 1-1, p.4. Plaintiff appears to have abandoned these allegations, as his deposition testimony presents a radically different story. During his deposition, Plaintiff acknowledged that the incident was recorded. Plaintiff asserts that Defendant Smith lifted Plaintiff by his legs and slammed Plaintiff in to the ground face first whereupon Plaintiff's faced was "smushed" on the ground.[7] Doc. 27-2, p. 25. Plaintiff further states that medical personnel came to his cell but he refused treatment. *Id*. at 26.

According to Defendants' version of events Plaintiff became physically aggressive and was taken to the ground after Plaintiff attempted to head-butt Defendant Smith. Doc. 27-7, p. 4-5. In an attempt to control Plaintiff, Defendants Mango, Smith, and Henderson forced Plaintiff to the ground, and once Plaintiff was under control medical personnel were summoned to examine Plaintiff. Defendants assert that the amount of force used was the amount necessary to "gain positive control" over Plaintiff. Doc. 27-7, p. 5; Doc. 27-5, p. 7. Pursuant to Department of Corrections Policy, Defendant Henderson filed a use of force incident report. Doc. 27-8, p. 2. During the resulting internal investigation, Defendants Mango, Smith, and Henderson gave sworn statements consistent with the above. Doc. 27-8, pp.3 - 7, 9- 10.

---

[7] Plaintiff's complaint alleged that the Defendants called him a snitch following the use of force. Plaintiff has not presented evidence of this allegation and made no mention of it in his deposition.

As explained above, the nonmoving party is entitled to have the facts viewed in the light most favorable to him, but "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purpose of ruling on a motion for summary judgment." *Mathis v. Adams*, 577 F. App'x 966, 968 (11th Cir. 2014) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (11th Cir. 2007)). Where, as here, video evidence is introduced, the "Court will accept the video's depiction over the opposing party's account of the facts where the video obviously contradicts that version of the facts." *Logan v. Smith*, 439 F. App'x 789, 800 (11th Cir. 2011) (citing *Pourmoghani-Esfanhani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010)). The Court cannot credit one parties version of facts over another based on issues not depicted in the video, as doing so is warranted only where the video "'so utterly discredit[s]' that allegation 'that no reasonable jury could have believed [it].'" *Mathis v. Adams*, 577 F. App'x 966, 968 (11th Cir. 2014) (quoting *Scott,* 550 U.S. at 380) (alterations in original).

Defendants present two separate video recordings depicting the events at issue in Plaintiff's excessive force claim. The first video, contained in Defendant's exhibit 7, is nine minutes and thirty-six seconds long and begins with Defendant Henderson explaining that Plaintiff, in cell 124, was being transferred to a strip cell. Defendant Henderson lifted the cell door flap and Plaintiff placed his hands through the opening while two other officers placed handcuffs on Plaintiff. Defendant Smith opened the cell door and Plaintiff was escorted through the cell block to an administrative location where Plaintiff was examined, out of view of the cameras, by medical personnel. Doc. 27, Exh. 7, DVD 1 of 2 at 1:25. The video picks up as Plaintiff is being moved back through the cell block. *Id*. at 3:18. Plaintiff stopped half way through the block and began talking. Much of what he says is inaudible due to the level of

background noise, but Plaintiff can clearly be heard saying "fuck that, you know what's going on me, fuck niggers," and "I know you scared to come to my door nigger." *Id.* at 4:02. It appears that Plaintiff is directing his comments at other inmates.

Plaintiff was then taken into the cell surrounded by three Defendants. He was placed facing the wall with Defendant Smith positioned between the wall and Plaintiff. Plaintiff, standing on a raised concrete section of the cell, apparently designed to be used as a bed, is considerably taller than Defendant Smith. Within seconds of entering the cell, Plaintiff quickly moved his head forward and down in an aggressive manner toward Defendant Smith's head. *Id.* at 4:14. Defendant Smith then lifted Plaintiff's left leg off the ground while Defendants Henderson and Mango pushed on Plaintiff's torso, causing Plaintiff to fall to the ground. Defendants Smith and Mango fell on top of Plaintiff. Defendant Henderson stated "back off, Smith, Smith, back off." *Id.* at 4:21-4:24. Defendant Smith then exited the cell as Defendants Henderson and Mango stood Plaintiff back onto his feet. *Id.* at 4:24-4:44. Plaintiff was again placed facing the wall with Defendant Henderson and Mango behind him. *Id.* at 4:52. After several inaudible comments, Plaintiff stated "I'm straight, I'm straight, I hope I'm hurt." *Id.* at 5:50-5:58. Plaintiff then taunted someone off screen and said he wanted to talk to "Captain," and as Defendants Mango and Henderson faced Plaintiff toward the back of the cell, Defendant Smith reentered. *Id.* at 6:50. Plaintiff stated that his "leg is already swoll up on the side." *Id.* at 7:01. The three officers then exited the cell, closed the door, and removed Plaintiff's restraints.

The second video, Defendants' exhibit 8, is nine minutes forty-four seconds long. The video is shot from an angle similar to exhibit 7. Although neither video depicts whether Defendant Smith "smushed" Plaintiff's face into the ground immediately following the take

15

down, it shows that Defendant Smith removed himself from Plaintiff and exited the cell within seven seconds of taking Plaintiff to the ground.

Based on the video evidence as outlined above, Defendants are entitled to judgment as a matter of law. Prior to the use of force, Plaintiff lunged his head down and toward Defendant Smith's head. Under these circumstances, the officers could have reasonably believed that force was necessary not only to protect themselves from Plaintiff, but also to ensure his compliance. The officers were not required to wait for the situation to escalate further or for Plaintiff to successfully make contact prior to taking action. *Cockrell*, 510 F.3d at 1311 (quoting *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990)). Some degree of force was authorized, as "prison guards may use force when necessary to restore order." *Cockrell*, 510 F.3d at 1311 (quoting *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990)).

The amount of force used was proportional to the need. Although Plaintiff was restrained with his hands behind his back, the Eleventh Circuit has held that throwing a handcuffed prisoner to the ground and pinning him there in an arm bar does not violate the Eighth Amendment where it is executed in response to a perceived threat. *See Burke v. Browns*, 853 F. App'x 683 (11th Cir. 2016) (affirming grant of summary judgment where handcuffed and shackled inmate was slammed to the ground and placed in an arm bar after spitting on correctional officer). "[I]t is difficult to conceive of less severe force" that could be used in these circumstances. *Id.*

The parties dispute whether Defendant Smith smashed Plaintiff's face into the ground, and the video evidence does not resolve the issue. Construed in the light most favorable to Plaintiff, the evidence shows that even if Plaintiff's face had been smashed into the ground, the resulting injury was de minimis. Defendant Smith was in contact with Plaintiff for only seven seconds, and there is no evidence that Plaintiff suffered more than minor injuries. Although

Plaintiff indicated in his deposition that he has a scar on his face and a skinned up knee, he refused medical attention at the time of the incident and indicated that he was "straight." Plaintiff has also failed to contest Defendants' evidence that includes a use of force assessment indicating that Plaintiff suffered no visible injury. Doc. 27-9, p. 6. This minimal level of force that causes no serious injury is the kind of "push or shove" that "almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (citing *Hudson*, 503 U.S. 1, 9 (1992)); *see e.g. Morrison v. City of Atlanta*, 2014 WL 11460480 (N.D. Ga. 2014) (smashing arrestee's face into ground in process of restraining her not excessive); *Smith v. Sec., Dept. of Corr.*, 524 F. App'x 511 (11th Cir. 2013) (summary judgment appropriate where prisoner alleged that officer attacked him and only injury was a swollen eye). Nevertheless, under clear Eleventh Circuit precedent, the degree of injury "is not solely determinative." *Stallworth v. Tyson*, 578 Fed. App'x 948, 953 (11th Cir. 2014) (citing *Wilkins*, 559 U.S. 1178 – 79).

Under the circumstances of this case, the use of force was not excessive. The *Skrtich* factors weigh in favor of Defendants. Defendant Smith used minimal force in response to what could reasonably have been perceived as a threat, the use of force was proportional to the need, and the force did not result in serious injury, Defendant Smith ceased the use of force seven seconds after it began, and Plaintiff was offered the opportunity to be examined by medical personnel within minutes. To the extent that Defendant Smith arguably could have used less force while retraining Plaintiff, Plaintiff has failed to show that the force was used maliciously and sadistically for the purpose of causing Plaintiff harm. *See e.g. McBride v. Rivers*, 1790 F. App'x 648, 656 (11th Cir. 2006) (defendants entitled to summary judgment where defendants repeatedly punched inmate in back of head and kneed him in the face after inmate was handcuffed, where defendants were responded to a disturbance and there was no evidence of

malice.) Based on this, there is no genuine issue of material fact concerning whether Defendants used excessive force in violation of the Eighth Amendment. Defendants are entitled to summary judgment and it is **RECOMMENDED** that the Motion (Doc. 27) be **GRANTED** as to this claim.

     II.    <u>Defense of Qualified Immunity</u>

Defendants argue that even if Plaintiff could show that his constitutional rights were violated, he cannot show that the right was clearly established.  "Qualified immunity protects government officials performing discretionary functions from civil trial (and other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146 (11th Cir. 1994) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1991)). The qualified immunity inquiry involves a three-step process. *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002). First, the burden is on the defendant to prove that he was acting within the scope of his discretionary authority. *Id*. If the defendant meets this burden, then the Court must determine whether plaintiff suffered a constitutional violation. *Id*. Finally, if the facts prove the violation of a constitutional right, the inquiry is whether the law with respect to that right was clearly established. *Id*.

As discussed above, there is no genuine issue of material fact as to whether Defendants violated the constitutional rights asserted by Plaintiff. Defendants are therefore entitled to qualified immunity at step one, and the Court need not consider whether a clearly established law is implicated. *See Hartley v. Parnell*, 193 F.3d 1263 (11th Cir. 1999) (citing *Cottrell v. Caldwell*, 85 F.3d 1480 (11th Cir. 1996)) (where "plaintiff has failed to show a violation of due process, []

it necessarily follows that the defendants are entitled to summary judgment on qualified immunity grounds.").

III.    Supervisory Liability

Defendants argue that to the extent Plaintiff seeks to hold supervising officials liable under a theory of respondeat superior they are entitled to summary judgment. As an initial matter, Plaintiff's supervisory liability claims were dismissed pursuant to the Court's frivolity review under 28 U.S.C. § 1915A(a). Nevertheless, "It is well established in this Circuit that supervisory officials are not liability under Section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). "Instead, supervisory liability under [Section] 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* (internal citations omitted).  While it is not entirely clear that Plaintiff seeks to hold any Defendant responsible through vicarious liability, to the extent that Plaintiff alleges a claim through vicarious liability, it is **RECOMMENDED** that the Defendants' motion be **GRANTED**.

IV.    Official Capacity Claims

Plaintiff's claim against Defendants for monetary damages in their official capacity is barred by the Eleventh Amendment. The Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. *Lassiter v. Alabama A & M University*, 3 F.3d 1482, 1485 (11th Cir. 1993). Congress has not abrogated Eleventh Amendment immunity in Section 1983 cases. *Carr v. City of Florence, Ala.*, 916 F.3d

1521, 1525 (11th Cir. 1990). Thus, if the state has not waived its immunity, the Eleventh Amendment bars a Section 1983 suit against that state. *Cross v. State of Ala.*, 49 F.3d 1490 (11th Cir. 1995). By extension, the Eleventh Amendment also bars Section 1983 suits against state officials in their official capacities, because in such a case, the state is considered the real party in interest since an award of damages would be paid by the state. *Id*. at 1503. Accordingly, to the extent that Plaintiff's seeks monetary damages against Defendants in their official capacity, it is **RECOMMENDED** that Defendants' motion be **GRANTED**.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 27) be **GRANTED** as to both Plaintiff's failure to protect claim and Plaintiff's excessive use of force claim, and as to all Defendants. Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 12th day of January, 2017.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge